[Doc. No. 39]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| THE COOPER HEALTH SYSTEM,<br><br>      Plaintiff,<br><br>  v.<br><br>VIRTUA HEALTH, INC.,<br><br>      Defendant. | Civil No. 09-735(RMB/JS) |

**OPINION AND ORDER**

This matter is before the Court on the "Motion of Non-Parties The Star Group and Plesser & Clifford for Protective Order" (hereinafter collectively "moving parties"). [Doc. No. 39]. The issue to be addressed is whether the non-parties' allegedly privileged and irrelevant documents must be produced to plaintiff. The Court has received plaintiff's opposition [Doc. No. 47] and the moving parties' reply [Doc. No. 57]. The Court has exercised its discretion to decide the moving parties' motion without oral argument (see Fed. R. Civ. P. 78 and L. Civ. R. 37.1(b)(3)). For the reasons discussed herein, the moving parties' motion is GRANTED in part and DENIED in part.[1]

---

[1] When plaintiff's motion was filed The Star Group ("Star") was not a party. Since then the Court granted plaintiff's motion to amend its complaint to name Star. [Doc. No. 63]. Plaintiff filed its amended complaint on July 31, 2009. [Doc. No. 71].

Background

By way of brief background, this case involves a dispute between a local hospital and health care system over their respective advertisements. The Star Group ("Star") is defendant's advertising agency of record. Star contends that Plesser & Clifford ("Plesser") is an independent research firm that performed "certain services" for Star related to Star's work for defendant. Moving Parties' Brief at 1, Doc. No. 39. This action was originally filed in New Jersey Superior Court, Camden County, Chancery Division, on February 11, 2009, and was removed to this court on February 20, 2009. While the action was pending in state court the Honorable Mary E. Colalillo entered a February 11, 2009 Order temporarily enjoining defendant from engaging in the publication and distribution of certain advertising. On February 18, 2009, Judge Colalillo modified her February 11, 2009 Order and entered temporary injunctive relief. Defendant removed the action to this court on February 20, 2009.

On February 11, 2009, Star was served with plaintiff's subpoena asking for the production of documents on February 16, 2009. On February 18, 2009, the moving parties produced documents. Star supplemented its production on February 19, 2009. On March 9, 2009, Plesser served additional documents in response to another subpoena plaintiff served. Brief at 2-3. On February 17, 2009, Judge Colalillo held a hearing on Star's motion to quash filed on

2

February 13, 2009. Star contends it agreed at the hearing to produce documents from itself and Plesser by the next day, without waiving any of its objections. Star and Plesser allege that Judge Colalillo directed them to produce documents but to redact objectionable material "pending further determination." Brief at 2. After Plesser was served with plaintiff's subpoena in this case, it produced additional documents and a privilege log listing twelve documents "withheld by virtue of attorney client, work product, litigation strategy, and relevancy." Brief at 2-3.

The documents Star produced to plaintiff contained redactions. Star alleges its redactions fit into three categories (1) the amount of the monthly agency fee Virtua paid Star "which information is highly sensitive," (2) the amount Star charges Virtua for advertising and marketing work performed by vendors and media outlets "which are rates specially negotiated by The Star Group with such third parties and which information is highly sensitive," and (3) strategic recommendations from Star to Virtua for future advertising which is "highly sensitive." Brief at 3.

Plesser claims it withheld documents concerning (1) Cooper's attempt to obtain a temporary restraining order against Virtua, (2) Cooper's subpoena to Plesser, and (3) decisions regarding Plesser's representation and selection of counsel. Brief at 3. Plesser argues, "[b]ecause Cooper has criticized the work of Plesser performed for The Star Group, and The Star Group's work in turn for

3

Virtua, both Plesser and The Star Group share a substantially similar legal interest in ensuring that Cooper's criticism's (sic) of the work are disproven." Brief at 3-4.

Plesser also objects to plaintiff's request for six reports prepared for Plesser's clients including Star. These reports were identified by Mr. Bernard Plesser during his April 29, 2009 deposition. The reports are: Medical Monitor Studies (2), TEVA Study, Tinea Pedis Study, St. Clair's Hospital Study and Cancer Cooperative Group Study. Brief at 4. Plesser claims "these reports are not the property of Plesser and Plesser does not believe that he has the authority to release them." Brief at 4. Star, which only owns the Medical Monitor Studies, objects to the production of the reports because they are irrelevant to plaintiff's claims. Id.

Plaintiff argues the withheld documents are not protected by the community of interest privilege. Plaintiff also argues that Star's redactions are excessive and exceed what was permitted by Judge Colalillo's February 18, 2009 Order and her February 17, 2009 ruling. Brief at 22, Doc. No. 47. In addition, plaintiff argues that Star and Plesser do not have standing to object on relevancy grounds to the production of the requested documents. The Court has reviewed in camera Star's redacted documents and Plesser's documents withheld on the grounds of privilege.

4

Discussion

    Star's Redactions

Plaintiff's basic dispute with Star is its claim that Star's redactions "far exceed the advertising rate information." Brief at 21. Plaintiff also claims that Star's redactions "clearly far exceed that permitted by [Judge Colalillo in her] ... February 18, 2009 Order and as stated by the Court during the February 17, 2009 hearing." Brief at 23. Plaintiff concludes "that this Court has no power to modify or alter the prior Order of Judge Colalillo" (id.) and, therefore, Star's motion should be denied. Star disputes that Judge Colalillo limited its redactions in the manner alleged by plaintiff.

In order to decide the present motion the Court does not have to determine the precise parameters of Judge Colalillo's directions to the parties. This is so because the Court will independently review Star's documents to decide what is discoverable and should be produced. Plaintiff is incorrect when it argues that the Court may not modify or alter Judge Colalillo's Orders.

After a state court action is removed to federal court the "case will then proceed as if it had been brought in the federal court originally." Tehan v. Disability Management Services, Inc., 111 F. Supp. 2d 542, 547 (D.N.J. 2000)(citations omitted). As to orders that were previously entered in the state case, they remain in full force and effect until dissolved or modified by the

5

district court. 28 U.S.C. §1450. This statute does not set forth the standard a federal court should apply to determine if it should dissolve or modify orders or judgments entered in a state case. "Instead, the orders or judgments entered by the state court prior to removal should be treated as orders or judgments entered by the district court." Tehan, 111 F. Supp. 2d at 547. This means that a district court has the power to enforce, continue or modify orders of the state court as it would any such order it might itself have entered. Id. See also James Wm. Moore, Moore's Federal Practice, §107.31[3] (3d ed. 2008) ("[i]n general, the federal court takes the case on removal exactly as the case stood in state court. Accordingly, the state court pleadings, any discovery had, orders entered, or proceedings will be presumed valid by the district court." Also stating, "[s]tate court rulings (including discovery orders and all other orders up to and including judgment) remain in effect until modified or supplanted by the federal court").

Judge Colalillo's Orders and directions to the parties were interlocutory. An interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Although a court has the power to revisit prior decisions, it should hesitate to do so absent a change in circumstances such as when new evidence is available. See Pub. Interest Research Group

of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 116-17 (3d Cir. 1997). Although this Court has the utmost respect for Judge Colalillo, the Court finds it appropriate to re-examine her discovery Orders. This is necessary because the case is now subject to federal rather than state discovery rules. Also, given the time that has passed since the case was filed, the claims and defenses in the case are now understandably more focused than when Judge Colalillo was facing an imminent injunction hearing.

The Court's in camera review of Star's documents confirm that Star's redactions generally fit into one of the three subject matter categories it identified. Further, the Court finds that the amount of the monthly agency fee defendant pays Star, the amount Star charges defendant for advertising and marketing work by vendors and media outlets, and Star's strategic recommendations for future advertising are irrelevant to the issues in the case. As this Court has previously noted, while the scope of Fed. R. Civ. P. 26 discovery is broad, it is not unlimited and may be circumscribed. See July 1, 2009 Order at 6, Doc. No. 60. Nonetheless, the Court finds that the following complete documents should be produced because the subject matter is relevant to the issues in the case: STB 0081, 00215 (only as to the identified media outlets), 249 - 251 and 304-305 (duplicate of 249-251). The remainder of Star's redactions are not relevant to plaintiff's claims concerning defendant's "Top Docs" advertising and do not

7

have to be produced.

The Court rejects plaintiff's argument that Star does not have standing to object to its subpoena on relevancy grounds. Plaintiff is judicially estopped from making this argument because it took a contrary position when it moved to quash defendant's subpoenas directed to non-parties.[2] See plaintiff's Reply Brief in Support of Motion to Quash at 1-3, Doc. No. 52.[3]

Plaintiff argues "there appear to be many documents related to the Top Doc website which were not produced by Star, ...." Brief at 23. Plaintiff refers to e-mail communications and documents related to the design and operation of the website. Id. at 23-24. Since it is unclear whether these documents were Ordered to be produced by Judge Colalillo, the Court will not address the issue in this Order. Now that Star has been joined in the case plaintiff will undoubtedly pursue discovery pursuant to Federal Rules 33 and 34. To the extent plaintiff believes Star's Rule 26 disclosures and discovery answers are inadequate, it may pursue its rights

---

[2] The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (citations omitted). Invocation of the doctrine is within a court's discretion. Id. at 750.

[3] To be clear, the Court is not contending that plaintiff played "fast and loose" with the rules. The Court acknowledges that when plaintiff filed its present motion the Court had not yet granted plaintiff's motion to amend to add Star as a defendant.

8

under the Federal Rules and L. Civ. R. 37.1.

<u>Plesser's Privilege Claim</u>

The Court has examined <u>in camera</u> the twelve (12) documents identified in Plesser's privilege log. <u>See</u> Motion at Exhibit G, Doc. No. 39-8.[4] Documents 1 to 8 on the list are e-mails between Star and Plesser regarding plaintiff's state court litigation and subpoena. No attorney is copied on the e-mails. Item 9 is an e-mail from Star to Plesser identifying the attorneys for defendant and Star. Item 10 is a fax cover sheet from Plesser to defendant's counsel. Item 11 is an e-mail from defendant's counsel to Plesser regarding Plesser's Certification. Item 12 is Plesser's draft Certification. Plesser claims these documents are protected by the attorney client privilege and work produce doctrine. Plesser also claims the documents are protected by the "community of interest" privilege.[5]

The moving parties' focus their argument on the community of interest privilege. This privilege "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others." <u>In re Teleglobe Communications Corp.</u>, 493 F.3d 345, 364 (3d Cir. 2007). However, the community of interest privilege is only applicable if an

---

[4] Numbers 4 and 5 duplicate numbers 1 and 2.

[5] Although Plesser claims a "litigation strategy" privilege, this is not discussed in its moving papers.

9

underlying privilege has been established. <u>Louisiana Municipal Police Employees Retirement System v. Sealed Air Corp.</u>, 253 F.R.D. 300, 309 (D.N.J. 2008)(citation omitted). Thus, the Court must analyze whether Plesser satisfied its burden of proving that the attorney client privilege or work product doctrine applies. <u>Id</u>. at 305-06.[6]

The Court finds that no privilege attaches to documents 1 to 8 and therefore they should be produced. As to the attorney-client privilege, none of the documents was authored by or sent to an attorney. More importantly, Plesser has not established that the e-mails were necessary to obtain informed legal advice which might not have been made absent the attorney client privilege. <u>See</u> <u>Fisher v. United States</u>, 425 U.S. 391, 403 (1976). As noted in <u>In re Gabapentin Patent Litigation</u>, 214 F.R.D. 178, 181 (D.N.J. 2003)(quoting <u>In re Spalding Sports Worldwide, Inc.</u>, 203 F.3d 800, 805 (Fed. Cir. 2000)), "the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice." Since Plesser has not satisfied its burden of proof, the Court finds that documents 1 to

---

[6]Plesser also argues its withheld documents are irrelevant. The Court will not separately analyze each document for relevancy. The documents generally concern plaintiff's document request and this litigation. These topics are arguably relevant to the issues in the case. Further, Plesser did not make a meaningful effort to demonstrate that its documents are irrelevant.

10

8 are not protected by the attorney client privilege.

As to the work product doctrine, the Court finds that it does not apply. The work product doctrine "shelters the mental processes of the attorney, providing a privileged area within which he [or she] can analyze and prepare his [or her] client's case." In re Cendent Corp. Sec. Litig., 343 F.3d 658, 661-62 (3d Cir. 2003)(citation omitted). The doctrine not only applies to an attorney's work product, but also to the work product of an attorney's agents and consultants. Id. at 662. Here, the work product doctrine does not apply because no attorney work product is implicated. The documents at issue consist of e-mail communications between representatives of Plesser and Star regarding the lawsuit between plaintiff and defendant. The e-mails were not prepared by or for attorneys. Further, no evidence has been presented that when Star and Plesser prepared the e-mails they were acting as agents or consultants for attorneys.

Plesser argues its documents are protected by the community of interest privilege because:

> The Star Group, Plesser, and Virtua all share a common interest in that Cooper in this lawsuit is attempting to impugn the quality and accuracy of work performed by The Star Group and Plesser for Virtua. If Cooper's allegations were accepted, it would suggest that The Star Group and Plesser were involved in creating false advertising claims for Virtua. The Star Group, Plesser, and Virtua have a common interest in combating Cooper's false allegations.

11

Brief at 8.  The Court disagrees.  The community of interest privilege is not applicable because no underlying attorney client or work product protection applies to the documents.

There are other reasons why the community of interest privilege is not applicable.  The community of interest privilege permits "attorneys representing different clients with similar legal interests to share information without having to disclose it to others."  <u>Teleglobe</u>, 493 F.3d at 364.  Here, Plesser and Star are not represented by different attorneys.  Further, the privilege does not extend to communications between non-attorneys who simply have a joint interest.  The community of interest privilege is applicable to communications amongst attorneys, "to be eligible for continued protection, the communication must be shared with the <u>attorney</u> of the member of the community of interest. " <u>Id</u>. (emphasis in original).  The Third Circuit explained:

> [t]he requirement that the clients' separate attorneys share information (and not the clients themselves) derives from the community-of-interest privilege's roots in the old joint-defense privilege, which (to repeat) was developed to allow <u>attorneys</u> to coordinate their clients' criminal defense strategies.

<u>Id</u>. (emphasis in original).  Further:

> [t]he attorney-sharing requirement helps prevent abuse by ensuring that the common-interest privilege only supplants the disclosure rule when attorneys, not clients, decide to share information in order to coordinate legal strategies.

12

Id.

Although Plesser acknowledges the withheld e-mails are not communications amongst attorneys, it nevertheless argues the community of interest privilege applies. Plesser contends the e-mails are protected because they "all have to do with legal strategy regarding the coordinated response to Cooper's improper attempt to force 'compliance' with a temporary restraining order not issued against Star or Plesser; Cooper's subpoena served on Plesser; and retention of Woodcock Washburn to represent both parties in response to Cooper's actions." Reply Brief at 3, Doc. No. 59. Plesser further argues the communications "involve legal strategy ultimately employed by Star and Plesser's joint attorneys, and involve communications between 'privileged persons'". Id. Plesser's argument fails, however, because Plesser and Star exchanged non-privileged information at a time when they were not acting as an agent or consultant for different attorneys. The community of interest privilege does not encompass communications between two non-parties about a non-privileged matter of joint interest.[7]

---

[7] It is unclear if Plesser and Star are pursuing the co-client or joint-client privilege. This privilege exists where two or more clients engage one or more common attorneys to represent them on a matter of interest to all. Teleglobe, 493 F.3d at 362 n. 15. "When co-clients and their common attorneys communicate with one another, those communications are 'in confidence' for privilege purposes." Id. at 363. The co-client privilege does not apply here because the subject documents do

13

Document 9 is an e-mail from Star to Plesser supplying the names of the attorneys for Star and defendant. Star asks Plesser to send the attorneys a copy of the subpoena Plesser served.  Since the e-mail is not an attorney client communication, and it is not attorney work product, the document must be produced.

Document 10 is a fax cover sheet from Plesser to Virtua's counsel that attaches documents 11 and 12.  Document 11 is an e-mail from Virtua's counsel (Philip H. Labowitz, Esquire) to Plesser with a draft Certification for Mr. Plesser to sign.  Document 12 is the draft Certification with a handwritten comment.

The Court finds that documents 10, 11 and 12 are protected by the attorney work product doctrine and do not have to be produced.  The e-mail and draft Certification were plainly prepared by Virtua's counsel for litigation purposes and reflect counsel's strategy and thought processes.  Further, the Court finds that the discovery protection afforded to these documents was not waived.  The waiver of the work-product doctrine is different than the waiver of the attorney-client privilege.  "The predicate of the waiver inquiry in the work-product context is not, as it is in the attorney-client context, whether the material was disclosed, but whether the material was disclosed to an adversary." <u>Maldonado v. New Jersey ex. rel. Administrative Office of Courts-Probation</u>

---

not contain communications with a joint attorney.

Division, 225 F.R.D. 120, 131 (D.N.J. 2004).  The essential question with respect to waiver of work product is whether the material has been kept away from adversaries.  Id.  The party alleging that a waiver occurred, rather than the party seeking work product production, has the burden of proof on the waiver issue. Id. at 132.  The Court finds that plaintiff has not demonstrated that the contents of documents 10, 11 and 12 were divulged to an adversary.  Plesser and Star had similar interests when they responded to plaintiff's subpoena.  After all, both companies challenged plaintiff's contention that their joint or combined work was misleading.  Therefore, the disclosure of Mr. Labowitz's work product to Plesser and Star did not result in the waiver of the work product doctrine, and documents 10, 11 and 12 do not have to be produced.

### Six Prior Studies

Cooper requests that Plesser produce six (6) studies it performed for Star's clients.  Two of the reports are owned by Star.  Cooper argues the reports are discoverable because they may disclose that Plesser made different disclosures than it did in its "Top Docs" work.  Brief at 26-27.  Cooper argues:

> For example, if all or many of the prior reports prepared by Plesser for Star disclosed such information, why was it not disclosed in this case related to this study?  Further, if all or many of the prior reports failed to disclose such information, this would support Cooper's claim that the retention of Mr.

> Plesser was nothing more than a commercially orchestrated advertising scheme and that Plesser was never independent or unbiased and always prepared reports for Star which were beneficial to Star's clients. Thus, these prior reports prepared by Plesser for Star and Star's clients are likely to lead to the discovery of relevant evidence related to Cooper's claims and are therefore discoverable.

Id. at 26-27.

Based on the present record before the Court, the Court finds that the six reports are not relevant to the claims and defenses in the case. Further, even if the reports are minimally relevant, the Court finds that a weighing of the factors in Fed. R. Civ. P. 26(b)(2)(C) results in a finding that the reports should not be produced. The issue in dispute concerns Star and Plesser's work for defendant, not work they did for other clients. If the Court permits plaintiff to discovery Plesser's reports for clients that have nothing to do with the issues in the case, it would unreasonably expand the scope of discovery and result in needless satellite litigation. Plaintiff's hope that the requested reports may contain relevant information does not justify its request. Although Plesser's work for clients other than defendant is not necessarily immune from discovery because of trade secret or confidentiality concerns, the requested reports must be relevant before they will be ordered to be produced. See generally Opperman v. Allstate New Jersey Insurance Co., C.A. No. 07-1887 (RMB), 2008

16

WL 5071044, at *2 (D.N.J. Nov. 24, 2008).  Plaintiff has not demonstrated that the requested reports are relevant.  Indeed, plaintiff has not even addressed the subject matter of the reports.

In response to plaintiff's argument that Plesser does not have standing to raise a relevancy objection, the Court relies on Fed. R. Civ. P. 26(b)(2)(C)(iii), to deny plaintiff's discovery request. This rule provides that the Court, "on its own ... <u>must</u> limit the frequency or extent of discovery ... if it determines that ... the burden or expense of the proposed discovery outweighs its likely benefit" (emphasis supplied).  The Court makes this finding and exercises its discretion to bar the production of Plesser's six reports.  The Court has already determined that plaintiff has not demonstrated that the reports are relevant.  Plesser and its clients should not be burdened by the disclosure of their confidential business information simply because plaintiff hopes the requested reports might contain information which at most is marginally relevant to the issues in the case.  Pursuant to Rule 26(b)(2)(C), the Court can and does exercise its discretion to limit discovery of Plesser and Star's trade secret or confidential business information where the requested documents are irrelevant to the claims and defenses in the case.

<u>Conclusion</u>

For all the foregoing reasons, and good cause being shown,

IT IS HEREBY ORDERED this 4th day of August, 2009, that Star

17

and Plesser's Motion for Protective order is GRANTED in part and DENIED in part; and

IT IS FURTHER ORDERED that Star shall produce complete copies of documents Bates stamped STB 0081, 00215 (only as to the identified media outlets), 249-251 and 304-305 (duplicate of 249-251).  None of Star's other redactions shall be produced; and

IT IS FURTHER ORDERED that Plesser shall produce documents 1 to 9; and

IT IS FURTHER ORDERED that documents 10, 11 and 12 do not have to be produced; and

IT IS FURTHER ORDERED that by August 18, 2009, Plesser and Star shall produce the documents identified in this Order.

s/Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge
